## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**LOUIS ROY CHAPMAN,**

     Plaintiff,

v.                                                                Civil Action No. **3:14CV641**

**G. BACON,** *et al.*,

     Defendants.

### MEMORANDUM OPINION

     Louis Ray Chapman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Chapman's Amended Complaint. (ECF No. 16.) The matter is before the Court on the Motions to Dismiss (ECF Nos. 21, 22) filed by the Commonwealth of Virginia, D.A. Slaw, and R. Woodson,[2] the Court's authority to review complaints by individuals proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2), and Chapman's Motion for a Preliminary Injunction (ECF No. 37). For the reasons that follow, the Court will grant the Motion to Dismiss for Failure to State a Claim with respect to Defendants Slaw and Woodson (ECF No. 22). Regarding the Commonwealth of Virginia, the Court will

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] D.A. Slaw is an institutional hearing officer at Lawrenceville Correctional Center ("LVCC"). (Am. Compl. 1.) R. Woodson is the Regional Ombudsman for the Virginia Department of Corrections ("VDOC"). (*Id.*)

GRANT the Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 21). The Court will DENY Chapman's Motion for a Preliminary Injunction (ECF No. 37).

## I. Standard for Motion to Dismiss for Failure to State a Claim

When an individual is proceeding *in forma* pauperis, this Court must dismiss the action if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, No. 93-6534, 1994 WL 520975, at * 1 (4th Cir. Sept. 23, 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Summary of Claims and Pertinent Allegations

Chapman's Amended Complaint spans twenty-five pages and lists nine separate claims for relief.[3] The Court recites here only those allegations pertinent to the claims against

---

[3] The Court corrects the punctuation, capitalization, emphasis, and spacing in the quotations from Chapman's submissions.

Defendants Slaw and Woodson.  Chapman makes the following claims against Defendants Slaw and Woodson:

| Claim 7 | By falsely keeping Chapman in punitive segregation, Institutional Hearings Officer Slaw violated Chapman's rights under (a) the Fourteenth Amendment[4] and (b) the Eighth Amendment.[5]  (Am. Compl. 3.) |
|---|---|
| Claim 8 | C. Jones, the LVCC Facility Ombudsman and R. Woodson, the Regional Ombudsman, violated Chapman's rights under the First Amendment[6] and the Fourteenth Amendment by failing "to process valid complaints," by failing "to give tracking numbers," and by "respond[ing] to grievance[s] concerning her (Jones)" in violation of institutional procedures.  (*Id.*) |

## A.  Background

On December 10, 2013, while housed in LVCC, Chapman was struck by his cellmate, Marcus Gunn.  (Am. Compl. ¶ 3.)  On "December 18, 2013, Gunn put his arm and hand on Chapman's chest to keep [Chapman] from leaving his cell."  (*Id.* ¶ 4.)  Chapman did not report either of the above incidents to prison officials.  (*Id.* ¶ 5.)

On January 30, 2014, in response to Chapman's request that Gunn turn down his CD player, Gunn kicked Chapman in the face and then began punching Chapman.  (*Id.* ¶ 2.)  "Chapman did <u>NOT</u> fight Gunn."  (*Id.*)  "Chapman was bleeding into his left eye, down his face onto his shirt and undershirt, from the cut put there by Gunn with his boot."  (*Id.*)  Chapman

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  Chapman also invokes the Due Process Clause of the Fifth Amendment. (Am. Compl. 17.)  However, as no federal officials are involved, Chapman's claims are governed by the Fourteenth Amendment.  *See Castillo v. McFaddan*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("[Plaintiff's] citation of the Fifth Amendment was, of course, incorrect.  The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States . . . .").

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

[6] "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.

contends that, "Marcus Gunn, a known racist, should have never been put in the same cell as Chapman, an elderly white man." (*Id.* ¶ 54.)

### B.    Allegations Pertaining to Defendant Slaw

Following this attack, Chapman received an institutional charge of "Fighting with Anyone." (*Id.* ¶ 21.)  Gunn pled guilty to assaulting Chapman and spent fifteen (15) days in segregation. (*Id.* ¶ 23.)  VDOC officials placed Chapman in segregation on January 30, 2014, and released him from segregation on February 23, 2014. (*Id.* ¶¶ 99, 103.)  Although Chapman's charge was eventually dismissed, Chapman spent twenty-three (23) days in segregation. (*Id.* ¶ 24.)[7]

On February 7, 2014, Chapman's institutional charge of Fighting with Anyone was dismissed. (*Id.* ¶ 101.)  Even though the charge of Fighting with Anyone was dismissed, Chapman contends that Institutional Hearing Officer Slaw denied him due process because: "(1) Slaw denied all Chapman's witnesses; (2) Slaw denied the medical records and pictures taken of Chapman's bloody face, chest, neck, and right thumb; [and] (3) Slaw [refused to consider Chapman's] eight (8) [institutional] requests to be moved from Marcus Gunn . . . ." (*Id.* ¶ 97.)

### C.    Allegations Pertaining to Defendant Woodson

On February 19, 2014, Chapman filed an informal complaint against Defendant Jones, the Facility Ombudsman, wherein he complained about her conduct in processing his grievance. (*Id.* ¶ 114.)  According to Chapman, VDOC Operating Procedure 866.1(IV)(G)(3) prohibits individuals who are the subject of the grievance from responding to the grievance. (*Id.* ¶ 113.)

---

[7] Counselor Hill told Chapman that the delay in releasing Chapman from segregation flowed from the fact that "'they were looking for a bottom bunk for [Chapman].'" (Am. Compl. ¶ 108.)  Chapman contends that "Hill's statement is not true." (*Id.*)  "Chapman did *not* have bottom bunk status at that time." (*Id.*)

Defendant Jones violated this policy and "responded to the grievance concerning her . . . ." (*Id.* ¶ 116.) "R. Woodson, Regional Ombudsman, approved this overt act . . . . [thereby] violating OP 866.1(IV)(G)(3) and the First and Fourteenth Amendments." (*Id.* ¶ 117.)

On January 31, 2014, Chapman filed an informal complaint alleging that J. Cooper had falsely charged Chapman with an institutional infraction. (*Id.* ¶ 118.) Defendant Jones responded, "'This issue needs to be addressed at the hearing.'" (*Id.* ¶ 119.) Thereafter, Chapman filed a regular grievance asserting that J. Cooper had falsely charged Chapman with an institutional infraction. (*Id.* ¶ 120.) Defendant Jones refused to assign a tracking number to this grievance and noted on the "INTAKE" portion of the grievance form that the matter was not grieveable because it concerned a disciplinary matter. (*Id.* ¶ 121; Compl. Ex. N, at 2, ECF No. 1-15.) Chapman appealed that decision to Defendant Woodson, who upheld the intake decision. (Compl. Ex. N, at 2.)

On March 7, 2014, Chapman submitted a grievance wherein he challenged the fact that he had received an "institutional charge with no investigation." (Am. Compl. ¶ 123 (citing Ex. O).) Defendant Jones refused to assign a tracking number to the grievance and noted on the "INTAKE" portion of the grievance that the 30-day filing period for pursuing the grievance had expired. (Compl. Ex. O, at 2.) Chapman appealed the intake decision. (*Id.*) Defendant Woodson upheld the intake decision. (*Id.*) Chapman contends that his "efforts to exhaust his grievance were frustrated by Jones and Woodson." (Am. Compl. ¶ 128.)

### III.  Analysis of the Motion to Dismiss for Failure to State a Claim

#### A.    Defendant Slaw

Chapman contends that Defendant Slaw denied him due process and subjected him to cruel and unusual punishment by allowing Chapman to languish in segregation for 23 days.

1.    **Due Process**

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases).   A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005).

a.    **The Constitution Fails to Confer a Liberty Interest in Avoiding Segregation**

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding segregation. *Id.*

b.    **Analysis of State-Created Liberty Interests**

Demonstrating the existence of a state-created liberty interest, requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If

7

the nature of the restraint the plaintiff challenges meets either prong of this threshold, the

plaintiff must next show that Virginia's statutory or regulatory language "'grants its

inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda*, 2009

WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong,* 209 F.3d 63, 66 (2d Cir.

2000)).

      With respect to the *Sandin* threshold analysis, the Court must first "determine what the

normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular*

*inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253).

Second, "with the baseline established, [the Court] determine[s] whether the prison conditions

impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at

254). The United States Court of Appeals for the Fourth Circuit has observed that, "[a]lthough

the general prison population is not the relevant atypicality baseline in all cases, it is the

touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to

confinement in the general population and later transferred to security detention." *Id.* at 528-29

(citing *Prieto*, 780 F.3d at 252)

      *Sandin* itself forecloses the notion that all forms of punitive or administrative segregation

presumptively constitute an "atypical and significant hardship . . . in relation to the ordinary

incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court rejected

Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive segregation

for thirty (30) days. *Id.* at 487. The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general
> prison population would have left his cell and worked, taken classes, or mingled
> with others for eight *hours* each day. As a result of disciplinary segregation,
> however, Conner, for 30 days, had to spend his entire time alone in his cell (with
> the exception of 50 *minutes* each day on average for brief exercise and shower

> periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (citations omitted). However, the majority concluded that the foregoing conditions "did not present the type of atypical, significant deprivation in which a State might *conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486 (emphasis added).

Here, Chapman has supplied no facts with respect to what life was like in the general prison population. Nor has Chapman supplied any facts regarding the conditions he experienced in segregation, much less facts that indicate those conditions were significantly more harsh than the conditions described in *Sandin* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. *Cf. Beverati*, 120 F.3d at 504 (finding that more burdensome conditions in segregation were not sufficiently atypical). Moreover, courts in the Fourth Circuit have repeatedly rejected the notion that inmates enjoy a protected liberty interest in avoiding confinement in segregation. *See United States v. Daniels*, 222 F. App'x 341, 342 n.* (4th Cir. 2007) ("Extended stays on administrative segregation . . . do not ordinarily implicate a protected liberty interest." (citing *Beverati*, 120 F.3d at 502)); *but see Incumaa*, 791 F.3d at 530-32 (concluding solitary confinement for twenty years involved onerous, severely restrictive conditions and constituted an atypical and significant hardship). Because Chapman fails to allege facts that suggest he enjoyed a protected liberty interest in avoiding a twenty-three-day (23) stay in segregation, his due process claim against Defendant Slaw, Claim 7(a), will be DISMISSED WITHOUT PREJUDICE.[8]

---

[8] Although doubtful, it is possible that Chapman could supply sufficient facts to plausibly suggest that he had a protected liberty interest in avoiding confinement in administrative segregation. *See Mauwee v. Palmer*, 471 F. App'x 594, 595–96 (9th Cir. 2012) (citation omitted) (observing that dismissal of claims should be without prejudice if the defect in pleading may be curable). Therefore, the dismissal of Claim 7(a) is without prejudice to file a proper amended complaint.

### 2.  Cruel and Unusual Punishment

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society . . . .'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions . . . .'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). Chapman supplies no factual allegations that plausibly suggest that the conditions in segregation deprived him of any basic human need or resulted in a serious or significant physical or emotional injury. *See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471-72 (4th Cir. 1999). Accordingly, Claim 7(b) will be DISMISSED WITH PREJUDICE.

### B.  Defendant Woodson

In Claim 8, Chapman contends that Defendant Woodson violated Chapman's rights under the First and Fourteenth Amendments by approving Defendant Jones's decision to reject some of Chapman's grievances at the intake level and allowing Defendant Jones to process grievances that pertained to Jones's conduct. "[T]here is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728,

729 (8th Cir. 1991)). Moreover, a prison official's failure to comply with grievance procedures

is not actionable under § 1983. *See, e.g., Chandler v. Cordova*, No. 1:09CV483 (LMB/TCB),

2009 WL 1491421, at \*3 n.3 (E.D. Va. May 26, 2009) (citations omitted) ("Because a state's

grievance procedure confers no substantive rights upon prison inmates, a prison official's failure

to comply with the grievance procedures is not actionable under § 1983 . . . ."); *Banks v. Nagle*,

Nos. 3:07CV419–HEH, 3:09CV14, 2009 WL 1209031, at \*3 (E.D. Va. May 1, 2009)

(dismissing claim that officials failed to properly process a grievance because no constitutional

right to participate in such proceedings exists).   Therefore, the portions of Claim Eight pertaining

to Defendant Woodson will be DISMISSED WITH PREJUDICE.

## IV.  Motion to Dismiss for Lack of Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for

lack of subject matter jurisdiction.   In deciding a motion made pursuant to Federal Rule of Civil

Procedure 12(b)(1), the court must ascertain whether "'plaintiff's allegations, standing alone and

taken as true [plead] jurisdiction and a meritorious cause of action.'" *Allianz Ins. Co. of Canada

v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (alteration in original)

(quoting *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984)).

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend XI.  "This bar to federal jurisdiction also extends to suits against a state by its

own citizens." *In re Collins*, 173 F.3d 924, 927 (4th Cir. 1999) (citing *Hans v. Louisiana*, 134

U.S. 1, 10 (1890)).   Nevertheless, "[s]tate sovereign immunity is not absolute . . . .  Congress,

pursuant to authority bestowed upon it by the [C]onstitution, can abrogate sovereign immunity. . . . Alternatively, a state may waive its protection under the Eleventh Amendment." *Taylor v. Virginia*, 951 F. Supp. 591, 593-94 (E.D. Va. 1996) (citations omitted). With respect to suits under 42 U.S.C. § 1983, Congress has not abrogated the Commonwealth of Virginia's immunity and the Commonwealth of Virginia has not consented to suit under 42 U.S.C. § 1983. *See Madden v. Virginia*, No. 3:11CV241-HEH, 2011 WL 2559913, at *3 (E.D. Va. June 28, 2011) (citation omitted). Accordingly, the Court lacks subject matter jurisdiction over Chapman's claims against the Commonwealth of Virginia. The Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 21) will be GRANTED. All claims against the Commonwealth of Virginia will be DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.[9]

## V. Chapman's Motion for Preliminary Injunctive Relief

Chapman has filed a Motion for Preliminary Injunctive Relief (ECF No. 37). In the Memorandum in Support of the Motion for Preliminary Injunctive Relief, Chapman complains that Defendants Jones, Woodson, and Townes continue to violate his rights by failing to properly process his grievances. (Mem. Supp. Mot. Prelim. Inj. 1-6, ECF No. 38.) Chapman requests that the Court enjoin Defendants Jones, Townes, and Woodson from responding to Chapman's informal complaints and grievances. (*Id.* at 6.)

"[A] preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Perry v. Judd*, 471 F. App'x. 219, 223 (4th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Such

---

[9] Of course, the Commonwealth of Virginia's immunity does not preclude this Court's ability "to 'enjoin state officials to conform their future conduct to the requirements of federal law.'" *Cobb v. Rector & Visitors of Univ. of Va*, 69 F. Supp. 2d 815, 824 (W.D. Va. 1999) (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).

remedy is "never awarded as of right." *Winter,* 555 U.S. at 24. "[G]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way." *Hughes Network Sys. v. InterDigital Commc'ns Corp.,* 17 F.3d 691, 693 (4th Cir. 1994) (citation omitted). Therefore, preliminary injunctions are "to be granted only sparingly." *Toolchex, Inc. v. Trainor,* 634 F.Supp.2d 586, 590–91 (E.D. Va. 2008) (quoting *In re Microsoft Corp. Antitrust Litig,* 333 F.3d 517, 524 (4th Cir. 2003)).

In order to sustain a claim for a preliminary injunction,[10] the party seeking such relief must demonstrate each of the following factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and, (4) the public interest. *Winter,* 555 U.S. at 20; *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346 (4th Cir.2009), *vacated on other grounds,* 559 U.S. 1089 (2010), *reinstated in relevant part,* 607 F.3d 355 (4th Cir. 2010). Chapman, as the party seeking a preliminary injunction, bears the burden of establishing that each factor supports granting the injunction. *Real Truth,* 575 F.3d at 346. Each factor must be demonstrated by a "clear showing." *Winter,* 555 U.S. at 22. The failure to show any one of the relevant factors mandates denial of the preliminary injunction. *Real Truth,* 575 F.3d at 346.

Chapman fails to demonstrate that any of foregoing factors favors granting preliminary injunctive relief. As discussed above, *see supra* Part III, it is now clear that Chapman will not succeed on his claims with respect to Defendants Woodson and Slaw. Chapman also makes no effort to demonstrate that he will likely succeed on the merits of his other claims or demonstrate how he will suffer irreparable harm in the absence of an injunction.

---

[10] A decision to grant a preliminary injunction rests within the sound discretion of the district court. *Perry,* 471 F. App'x at 223 (citation omitted).

Furthermore, neither the balance of the equities nor the public interest favors granting a preliminary injunction. To the extent that Chapman raises equitable or public interest concerns because the conduct of Defendants frustrates his ability to utilize the grievance procedure for any of his pending claims, the remedy does not lie in an injunction. Rather, Chapman can proffer how Defendants allegedly failed to properly process his grievances in response to an assertion by Defendants that Chapman failed to exhaust his administrative remedies. Thus, neither the balance of the equities nor the public interest favors granting an injunction. Accordingly, Chapman's Motion for a Preliminary Injunction (ECF No. 37) will be DENIED.

## VI. Conclusion

The Motion to Dismiss for Failure to State a Claim (ECF No. 22) and the Motion to Dismiss for Lack of Jurisdiction (ECF No. 21) will be GRANTED. Chapman's Motion for a Preliminary Injunction (ECF No. 37) will be DENIED. Claim 7(a) will be DISMISSED WITHOUT PREJUDICE. Claim 7(b) will be DISMISSED WITH PREJUDICE. Claim 8 against Defendant Woodson will be DISMISSED WITH PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

/s/

M. Hannah Lauck
United States District Judge

Date: MAR 1 7 2016
Richmond, Virginia

14