IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LOUIS ROY CHAPMAN,

       Plaintiff,

v.                                    Civil Action No. **3:14CV641**

G. BACON, *et al.*,

       Defendants.

## MEMORANDUM OPINION

Louis Ray Chapman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Motion to Dismiss for Failure to State a Claim (ECF No. 80) filed by Defendants G. Bacon, C. Townes, Green, J. Cooper, R.C. Stith, and C. Jones (collectively, "the LVCC Defendants"),[2] the Motion to Dismiss for Failure to State a Claim (ECF No. 82) filed by Defendant D.A. Slaw,[3] the Court's authority to review complaints by individuals proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2), and the Court's Memorandum Order of December 1, 2015, directing Chapman to show cause as

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] G. Bacon is a Sergeant at Lawrenceville Correctional Center ("LVCC"). (Second Am. Compl. 1, ECF No. 79.) C. Townes is the Unit Manager of 40 Building at LVCC. (*Id.*) Green is a Lieutenant at LVCC. (*Id.*) J. Cooper is a Correctional Officer at LVCC. (*Id.*) R.C. Smith is a Captain at LVCC. (*Id.*) C. Jones is the Ombudsman for LVCC. (*Id.*)

[3] D.A. Slaw is an Institutional Hearings Officer at LVCC. (Second Am. Compl. 1.)

to why Defendant Ponton[4] should not be dismissed without prejudice for failure to serve him in a timely manner. For the reasons that follow, the Court will DISMISS WITHOUT PREJUDICE all claims against Defendant Ponton pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The Court will GRANT the Motion to Dismiss for Failure to State a Claim (ECF No. 80) filed by the LVCC Defendants with respect to Chapman's claims against Defendants Cooper, Stith, and Jones, but will DENY the Motion with respect to Chapman's claims against Defendants Bacon, Townes, and Green. With respect to Defendant Slaw, the Court will GRANT the Motion to Dismiss for Failure to State a Claim (ECF No. 82). The Court will also DISMISS Chapman's claim against Defendants Jane Doe and John Doe.

## I. Procedural History

By Memorandum Opinion and Order entered on March 17, 2016, the Court granted the Motions to Dismiss for Failure to State a Claim filed by Defendants Slaw and Woodson and the Motion to Dismiss for Lack of Jurisdiction filed by the Commonwealth of Virginia. *Chapman v. Bacon*, No. 3:14CV641, 2016 WL 1071014, at *7 (E.D. Va. Mar. 17, 2016). Specifically, the Court dismissed Claim 7(a) (Chapman's Fourteenth Amendment[5] due process claim against Slaw) without prejudice,[6] dismissed Claim 7(b) (Chapman's Eighth Amendment[7] claim against Slaw) with prejudice, and dismissed Claim 8 against Woodson with prejudice. *Id.*

---

[4] Ponton is a former Sergeant at LVCC. (Am. Compl. 1; *see* ECF No. 34, at 2 (suggesting that Ponton was "in Federal Custody . . . awaiting trial.").)

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[6] The Court stated with respect to Claim 7(a):

> Although doubtful, it is possible that Chapman could supply sufficient facts to plausibly suggest that he had a protected liberty interest in avoiding confinement in administrative segregation. *See Mauwee v. Palmer*, 471 F. App'x 594, 595-96 (9th Cir. 2012) (citation omitted) (observing that dismissal of claims

Following the entry of the March 16, 2016 Memorandum Opinion and Order, Chapman

filed a Second Amended Complaint, (ECF No. 79), wherein he sought to correct some of the

deficiencies noted in the March 16, 2016 Memorandum Opinion and Order.  As discussed below,

Chapman has sufficiently stated a claim for relief against Defendants Bacon, Townes, and Green,

but has failed to do so with respect to his claims against Defendants Cooper, Stith, Jones, Slaw,

Jane Doe, and John Doe.

## II.  Failure to Serve Ponton

Under the version of Federal Rule of Civil Procedure 4(m)[8] in effect at the time Chapman

filed his action, Chapman had one hundred and twenty (120) days from March 20, 2015 to serve

the Defendants.  On July 23, 2015, Chapman moved for an extension of time to serve the

unserved Defendants.  (ECF No. 39.)  By Memorandum Order entered on August 17, 2015, the

Court directed the Marshal to serve the remainder of the unserved Defendants except for

Defendant Ponton.  (ECF No. 40.)  With respect to Defendant Ponton, Chapman suggested that

"Sergeant Ponton is in Federal Custody believed to be in the Petersburg Federal Facility awaiting

---

should be without prejudice if the defect in pleading may be curable).  Therefore,
the dismissal of Claim 7(a) is without prejudice to file a proper amended
complaint.

*Chapman*, 2016 WL 1071014, at *5 n.8.

[7] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and
unusual punishments inflicted."  U.S. Const. amend. VIII.

[8] Rule 4(m) provided, in pertinent part:

If a defendant is not served within 120 days after the complaint is filed,
the court–on motion or on its own after notice to the plaintiff–must dismiss the
action without prejudice against the defendant or order that service be made
within a specified time.  But if the plaintiff shows good cause for the failure, the
court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (2014).

trial." (ECF No. 34, at 2.)  By Memorandum Order entered on August 17, 2015, the Court

denied Chapman's request to have Defendant Ponton served at the Federal Correctional Complex

in Petersburg, Virginia, because that facility does not house pretrial detainees.  The Court stated

that it "is willing to assist Chapman in serving Sergeant Ponton, provided Chapman can provide

more concrete information about Ponton's location."  (ECF No. 40, at 3.)  Chapman did not

provide any further information about Defendant Ponton's location.  Accordingly, by

Memorandum Order entered on December 1, 2015, the Court directed Chapman "to show good

cause why all claims against Ponton should not be dismissed."  (ECF No. 59, at 2.)  Additionally,

the Court denied without prejudice Chapman's motion for an extension of time to serve the

Defendants.  (*Id.*)

Chapman has not responded to the Court's December 1, 2015 Memorandum Order.

Chapman has therefore failed to state good cause for his failure to serve Defendant Ponton in a

timely manner.  Accordingly, all claims against Defendant Ponton will be DISMISSED

WITHOUT PREJUDICE pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

### III.  Preliminary Review and Standard for Motion to Dismiss for Failure to State a Claim

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any

action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state

a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The

first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims

where the "'factual contentions are clearly baseless.'"  *Clay v. Yates,* 809 F. Supp. 417, 427

(E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).  The second standard is

the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

4

applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp.,* 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir. 2002)). Lastly,

5

while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th

Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and

constitutional claims that the inmate failed to clearly raise on the face of his or her complaint.

*See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City*

*of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### IV. Summary of Claims and Pertinent Allegations

Chapman's Second Amended Complaint spans thirty-eight pages and lists nine separate

claims for relief.[9]  The Court recites here those allegations pertinent to the claims against

Defendants Bacon, Townes, Green, Cooper, Stith, Slaw, and Jones, as well as those against

Defendants Jane Doe and John Doe.[10]  Chapman makes the following claims against these

Defendants:

Claim 1    Defendant G. Bacon violated Chapman's rights under the Eighth
Amendment by threatening "to lock Chapman in punitive segregation if he
told anyone that inmate Marcus Gunn assaulted him. This chilling on
Chapman led to a vicious assault by Gunn causing Chapman physical
injury." (Second Am. Compl. 2.)[11]

---

[9] The Court corrects the punctuation, capitalization, emphasis, spelling, and spacing in
the quotations from Chapman's submissions.

[10] Claim 3 pertained to Defendant Ponton, who has been dismissed as a party to this
action.

[11] Chapman also asserts that Defendants Bacon, Townes, and Green violated his rights
under the Fourteenth Amendment by failing to protect Chapman from Gunn's assault. (Second
Am. Compl. 2.)  However, "when a prison official is accused of deliberate indifference to a
serious risk of harm, that claim is properly considered under the Eighth Amendment." *Lovings v.
Johnson*, No. Civ.A. 7:05CV000050, 2005 WL 2076535, at *1 (W.D. Va. Aug. 25, 2005).
Moreover, to the extent that Chapman claims that Defendants Bacon, Townes, and Green acted
negligently, "[a] prison official's negligence does not violate the due process clause." *Gordon v.
Kidd*, 971 F.2d 1087, 1095 (4th Cir. 1992) (citing *Davidson v. Cannon*, 474 U.S. 344, 347
(1986)).  Accordingly, the Court has considered Chapman's claims with respect to Bacon,
Townes, and Green under the Eighth Amendment only.

| Claim 2 | Defendant C. Townes violated Chapman's rights under the Eighth Amendment by failing to protect Chapman from Gunn's assault. (*Id.*) |
|---|---|
| Claim 4 | Defendant Green violated Chapman's rights under the Eighth Amendment by failing to protect Chapman from Gunn's assault "after she was notified by Sergeant G. Bacon that Chapman was in imminent danger from his cell partner Marcus Gunn." (*Id.*) |
| Claim 5 | Defendant Cooper violated Chapman's rights under the Eighth and Fourteenth Amendments by agreeing with others "to approve the overt act of Cooper writing a false charge of fighting with anyone and false imprisonment of Chapman." (*Id.*) |
| Claim 6 | Defendant Stith violated Chapman's rights under the Fifth,[12] Eighth and Fourteenth Amendments by "sign[ing] off on a false charge written by Officer J. Cooper for fighting with anyone and falsely imprisoned Chapman." (*Id.*) |
| Claim 7(a) | By falsely keeping Chapman in punitive segregation, Defendant Slaw violated Chapman's rights under the Fourteenth Amendment. (*Id.* at 3.) |
| Claim 8 | Defendant C. Jones violated Chapman's rights under the First Amendment[13] and the Fourteenth Amendment by failing "to process valid complaints," by failing "to give tracking numbers," and by "respond[ing] to grievance[s] concerning her (Jones)" in violation of institutional procedures. (*Id.*) |
| Claim 9 | Defendants Jane Doe and John Doe "intentionally li[ed], mis[led], and [gave] false information concerning the assault on Chapman to the Commonwealth's Attorney of Brunswick County, Virginia, Lezlie Green." (*Id.*) |

---

[12] "No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V.  However, as no federal officials are involved, Claim 6 is governed by the Eighth and Fourteenth Amendments. *See Castillo v. McFaddan*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("[Plaintiff's] citation of the Fifth Amendment was, of course, incorrect. The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.").

[13] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

**A.  Background**

On December 10, 2013, while housed in LVCC, Chapman was struck by his cellmate,

Marcus Gunn. (Second Am. Compl. ¶ 3.) On "December 18, 2013, Gunn put his arm and hand

on Chapman's chest to keep [Chapman] from leaving his cell." (*Id.* ¶ 4.) Chapman did not

report either of the above incidents to prison officials. (*Id.* ¶ 5.)

On January 30, 2014, in response to Chapman's request that Gunn turn down his CD

player, Gunn kicked Chapman in the face and then began punching Chapman. (*Id.* ¶ 2.)

"Chapman did <u>NOT</u> fight Gunn." (*Id.*) "Chapman was bleeding into his left eye, down his face

onto his shirt and undershirt, from the cut put there by Gunn with his boot." (*Id.*) Chapman

contends that, "Marcus Gunn, a known racist, should have never been put in the same cell as

Chapman, an elderly white man." (*Id.* ¶ 54.)

**B.  Allegations Pertaining to Defendant Bacon**

On January 30, 2014, Chapman wrote an emergency grievance regarding the assault by

Gunn that occurred earlier that day. (Compl. Ex. B, at 1; ECF No. 1-2; *see also* Second Am.

Compl. ¶ 11.) Defendant Bacon responded: "Your situation was notif[ied] by [Unit Manager],

St. Ponton and counsel[or] Newcomb, I Sgt. Bacon advised Lt. Green of the situation that was

going on between you and it was advised to you that if you or your roommate start anything both

will be lock[ed] up." (Compl. Ex. B, at 1; *see also* Second Am. Compl. ¶ 11.)

Chapman states that he did not report the two prior assaults by Gunn that occurred in

December 2013 because Defendant Bacon's "threat[, made on January 30, 2014,] of going to

punitive segregation had a chilling effect on Chapman reporting." (Second Am. Compl. ¶ 12.)

Despite Chapman's failure to report the prior assaults, Chapman alleges that Defendant Bacon

knew that Gunn had assaulted Chapman twice in December of 2013.[14]  (*Id.*)  Chapman reported

the January 30, 2014 assault by Gunn "because [Chapman] was kicked and beaten bloody."  (*Id.*

¶ 19.)

### C. Allegations Pertaining to Defendant Townes

Prior to the January 30, 2014 assault, Defendant Townes told Chapman, "I know you are

in hell" and asked Chapman to find someone who would be willing to trade with Gunn to be

Chapman's cellmate.  (*Id.* ¶¶ 35-36.)  On January 13, 2014, Chapman sent a request to Defendant

Townes, "telling her he found a place to move to get away from Marcus Gunn."  (*Id.* ¶ 38.)

Chapman requested to move to cell 112 in pod 31.  (*Id.*)  However, "Townes waited so long the

cell was filled."  (*Id.* (citing Ex. D).)[15]

On January 14, 2014, Defendant Townes told Chapman that "she would talk to Ms. Fant

50 building unit manager."  (*Id.* ¶ 40.)  Defendant Townes never talked to Ms. Fant, even though

Ms. Fant had approved Chapman for the Honor Pod.  (*Id.*)  On January 15, 2014, Chapman sent

a second request to Defendant Townes, stating: "'Please talk to Ms. Fant.  Please move me to

52, Honor Pod or move Marcus Gunn out of the cell we are not compatible.'"  (*Id.* ¶ 41 (citing

Ex. F).)

On January 21, 2014, "[a]fter several weeks of looking, S. Brown, [an] inmate Chapman

knew from ACC arrived and was in 33 pod.  He would trade with Gunn.  Chapman told Townes

[that] Brown would trade but Townes said wait and move to 52 the Honor Pod."  (*Id.* ¶ 43.)

On January 22, 2014, Chapman sent another request to Defendant Townes, stating:

---

[14] The Court recognizes that these facts, as alleged by Chapman, are contradictory and therefore difficult to reconcile.  The Court addresses this further in Part V.A.2.a., *infra*.

[15] The exhibits Chapman references in his Second Amended Complaint are those that he included with his initial Complaint.  (*See* ECF 1-1 through 1-22 (Exs. A through U).)  Chapman did not refile these exhibits with his Second Amended Complaint.

"Per our conversation of January 21, 2014, 8:30 am, you were to place me on the move list to building 52, Honor Pod. You wrote a yellow stick-it note with instructions for Ms. Myers, counselor, you kept the approved request from Ms. Fant U/M 50 building and along with a 50 building bed log. All three (3) you said you would put on Myers' desk. Myers was not here. There are only two (2) spaces available. Please place me on the move sheet if you haven't. You told me 'I know you are in hell.' This move needs to take place thanks."

(*Id.* ¶ 44; Compl. Ex. H, at 1, ECF No. 1-8.) Defendant Townes replied that Chapman had been placed on the waiting list. (Second Am. Compl. ¶ 44.) Chapman alleges that Defendant Bacon "admitted she notified Townes of the situation" between Gunn and Chapman on January 30, 2014. (*Id.* ¶ 46.)

### D. Allegations Pertaining to Defendant Green

On January 30, 2014, Defendant Bacon admitted in her response to Chapman's emergency grievance that she had advised Defendant Green of the situation between Gunn and Chapman. (*Id.* ¶ 70 (citing Ex. B.).) "After Lt. Green learned of the danger Chapman faced, she failed to move him or Marcus Gunn." (*Id.* ¶ 71.) According to Chapman, Defendant Green "did not adequately supervise Sgt. Bacon who violated Chapman's rights." (*Id.*)

### E. Allegations Pertaining to Defendant Cooper and Stith

On January 31, 2014, Defendants Cooper and Stith "agreed between themselves to commit the overt act of J. Cooper writing a false charge and falsely imprisoning Chapman in punitive segregation, an atypical environment, for twenty-three (23) days." (*Id.* ¶ 89 (citing Ex. J); *see also id.* ¶ 78.) In the charge, Defendant Cooper stated: "'I was called to 41 pod for assistance with offenders having an altercation. Offender Chapman admitted to being in a physical altercation with offender Marcus Gunn 1141054. Therefore a charge was written.'" (*Id.* ¶ 80 (quoting Ex. J).) Officials dismissed the charge on February 7, 2014. (*Id.* ¶¶ 79, 90 (citing Ex. I).)

### F. **Allegations Pertaining to Defendant Slaw**

Following the January 30, 2014 attack, Chapman received an institutional charge of "Fighting with Anyone." (*Id.* ¶ 21.) Gunn pled guilty to assaulting Chapman and spent fifteen (15) days in segregation. (*Id.* ¶ 159.) Virginia Department of Corrections ("VDOC") officials placed Chapman in segregation on January 30, 2014. (*Id.* ¶ 140.) Although officials dismissed Chapman's fighting charge on February 7, 2014, they did not release him from segregation until February 23, 2014. (*Id.* ¶¶ 142, 144-45.)[16] Chapman contends that while in segregation, he was subjected to more restrictive conditions than in general population. (*See id.* ¶ 116.)

Even though the fighting charge was dismissed, Chapman contends that Defendant Slaw denied him due process because: "Slaw did not afford Chapman the right to an attorney. . . . Slaw denied all Chapman's witnesses. . . . Slaw denied the medical records and pictures taken of Chapman's bloody face, chest, neck, and right thumb. . . . [and] Slaw [refused to consider Chapman's] eight (8) [institutional] requests to be moved from Marcus Gunn . . . ." (*Id.* ¶ 200.)

### G. **Allegations Pertaining to Defendant Jones**

On February 19, 2014, Chapman filed an informal complaint against Defendant Jones, the facility Ombudsman, wherein he complained about her conduct in processing his grievance. (*Id.* ¶ 220; *see* Compl., Ex. K.) On February 24, 2014, Chapman filed a regular grievance, reiterating his complaint against Defendant Jones in processing his grievance. (Second Am. Compl. ¶ 221; *see* Compl., Ex. L.) According to Chapman, VDOC Operating Procedure

---

[16] Counselor Hill told Chapman that the delay in releasing Chapman from segregation flowed from the fact that officials were attempting "to find [Chapman] a bottom bunk." (Second Am. Compl. ¶ 163.) Chapman acknowledged in a sworn affidavit that "he did not have bottom bunk status at that time." (*Id.* ¶ 164.)

11

866.1(IV)(G)(3) prohibits individuals who are the subject of the grievance from responding to the grievance. (*See* Second Am. Compl. ¶ 222.) Chapman claims that Defendant Jones violated this policy and the First and Fourteenth Amendments by "respond[ing] to the grievance concerning her." (*Id.*)

On January 31, 2014, Chapman filed an informal complaint alleging that Defendant Cooper had falsely charged Chapman with an institutional infraction. (*Id.* ¶ 224; *see* Compl., Ex. M.) Major Blowe[17] responded: "'This issue needs to be addressed at the hearing.'" (Second Am. Compl. ¶ 225.) Thereafter, Chapman filed a regular grievance asserting that Defendant Cooper had falsely charged Chapman with an institutional infraction. (*Id.* ¶ 226.) Defendant Jones refused to assign a tracking number to this grievance and noted on the "INTAKE" portion of the grievance form that the matter was not grievable because it concerned a disciplinary matter. (*Id.* ¶ 226; Compl. Ex. N, at 2, ECF No. 1-15.)

On March 7, 2014, Chapman submitted a grievance wherein he challenged the fact that he had received an "institutional charge with no investigation." (Second Am. Compl. ¶ 229 (citing Ex. O).) Defendant Jones refused to assign a tracking number to the grievance and noted on the "INTAKE" portion of the grievance that the 30-day filing period for pursuing the grievance had expired. (*Id.* ¶ 230 (citing Ex. O, at 2.) Chapman contends that his "efforts to exhaust his grievance were frustrated by Jones." (Second Am. Compl. ¶ 234.)

## H. Allegations Pertaining to Jane Doe and John Doe

Chapman contends that Defendants Jane Doe and John Doe, employees of either the VDOC or The Geo Group, Inc., "lied and gave false information, intentionally misleading, [to] the Commonwealth's Attorney of Brunswick County, Virginia." (*Id.* ¶ 248.) According to

---

[17] Chapman references Defendant Jones as responding, but Major Blowe responded to the informal complaint. (*See* Compl., Ex. M.)

Chapman, Lezlie Green, the Commonwealth's Attorney for Brunswick County, "admitted [that] 'it is clear from your statement and from inmate Gunn's statement that Gunn hit you and caused an injury.'" (*Id.* ¶ 250 (citing Ex. V, ECF No. 13, at 5-9.) On November 25, 2014, in response to Green's letter, Chapman stated: "'I don't know who your source is for the misinformation but it is a complete misrepresentation of the facts.'" (*Id.* ¶ 252.) According to Chapman, Defendants Jane Doe and John Doe lied and gave false information in violation of section 18.2-461 of the Virginia Code.[18] (*Id.* ¶ 249).

## V. Analysis

### A. Defendants Bacon, Townes, and Green

Chapman contends that Defendants Bacon, Townes, and Green violated his rights under the Eighth Amendment by failing to take action to protect him from the assault by Gunn that occurred on January 30, 2014.

It is clear that the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). However, not every harm caused by another inmate translates into constitutional liability for the officers responsible for the inmate's safety. *See id.* at 834. In order for a plaintiff to state a claim for failure to protect, a plaintiff must allege facts that plausibly suggest that he or she was

---

[18] The statute provides:

> It shall be unlawful for any person (i) to knowingly give a false report as to the commission of any crime to any law enforcement official with intent to mislead, or (ii) without just cause and with intent to interfere with the operations of any law-enforcement official, to call or summon any law-enforcement official by telephone or other means, including engagement or activation of an automatic emergency alarm. Violation of the provisions of this section shall be punishable as a Class 1 misdemeanor.

Va. Code Ann. § 18.2-461 (West 2016).

"incarcerated under conditions posing a substantial risk of serious harm," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), and that the defendant acted with "deliberate indifference" to that danger. *Id.* at 837.

Defendants Bacon, Townes, and Green argue that Claims 1, 2, and 4 must be dismissed because "the well-pled facts fail to establish that any of these defendants had actual knowledge that inmate Gunn posed a substantial risk to Chapman's safety." (Mem. Supp. Mot. Dismiss 11, ECF No. 81.) These Defendants, however, fail to direct the Court to any instance where a court has concluded that facts similar to those alleged by Chapman were insufficient to state a claim. Furthermore, as explained below, the Second Amended Complaint's factual allegations are more than sufficient to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).

### 1. **Substantial Risk of Harm**

"Any time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). As was the case in *Westmoreland*, "[t]he issue of constitutional import presented in [Chapman's] action is when the risk of harm becomes so substantial that 'deliberate indifference' to it, within the meaning of *Farmer v. Brennan*, is the legal equivalent of inflicting 'punishment.'" *Id.*[19] In *Westmoreland*, this Court observed that:

> The decisions finding that prison assaults constitute unconstitutional "punishment" have most often done so upon finding one of three species of particularized harm. In the first, the plaintiff has been at some particularized risk individually because of: (i) a personal trait; or (ii) membership in an identifiable class that is particularly vulnerable to harm. In the second, the person who

---

[19] In *Farmer*, the Supreme Court expressly declined to define "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." *Farmer*, 511 U.S. at 834 n.3.

> committed the assault has demonstrated an unusually violent nature of which the defendant knows and which makes the assailant a substantial risk to his [or her] fellow inmates. In the third, the defendants were aware that the specific assault was ongoing or had occurred, yet had failed to respond to protect, or to treat, the victim.

*Id.* (internal citations omitted). Here, Chapman arguably alleges circumstances falling within the second and, possibly, the third species of particularized harm articulated in *Westmoreland*. However, neither *Westmoreland* nor the relevant jurisprudence suggests that the foregoing list constitutes an exhaustive description of the circumstances giving rise to a constitutionally significant risk of inmate upon inmate assault. *Id.*

A risk of assault may be sufficiently substantial as to require action by prison officials where it is "'highly probable'" that a particular attack will occur, or in instances where a particular inmate "pose[s] a 'heightened risk of assault to the plaintiff.'" *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see, e.g.*, *Purvis v. Johnson*, 78 F. App'x 377, 379 (5th Cir. 2003) (concluding that plaintiff's allegations that he informed officials four times that his cell-mate was a racist and threatened him every day because he was white, sufficiently stated a claim for failure to protect). Negligence or inadvertence does not suffice: "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (alteration in original) (internal quotation marks omitted).

Chapman has pled sufficient facts to suggest that he faced a substantial risk of harm from Gunn as of January 30, 2014. On December 10, 2013, Gunn struck Chapman. (Second Am. Compl. ¶ 3.) On "December 18, 2013, Gunn put his arm and hand on Chapman's chest to keep [Chapman] from leaving his cell." (*Id.* ¶ 4.) Chapman contends that Gunn is a "known racist [who] should have never been put in the same cell as Chapman, an elderly white man." (*Id.* ¶ 54.) Given the "demonstrated proclivity for antisocial criminal, and often violent, conduct"

15

that can occur among inmates, the Second Amended Complaint plausibly suggests a strong likelihood that Gunn would commit acts of violence against Chapman. *See Budz*, 398 F.3d at 911; *Purvis*, 78 F. App'x at 379.

## 2. Deliberate Indifference

### a. Defendant Bacon (Claim 1)

In his Second Amended Complaint, Chapman alleges that on January 30, 2014, he wrote an emergency grievance regarding the assault by Gunn that occurred earlier that day. (Second Am. Compl. ¶ 11; *see also* Compl. Ex. B, at 1.) Defendant Bacon responded: "Your situation was notif[ied] by [Unit Manager], S[g]t. Ponton and counsel[or] Newcomb. I Sgt. Bacon advised Lt. Green of the situation that was going on between you and it was advised to you that if you or your roommate start anything both will be lock[ed] up." (Compl. Ex. B, at 1; *see also* Second Am. Compl. ¶ 11.)

According to Chapman, he did not report the two prior assaults by Gunn that occurred in December 2013 because Defendant Bacon's "threat[, made on January 30, 2014,] of going to punitive segregation had a chilling effect on Chapman reporting." (Second Am. Compl. ¶¶ 12, 17.) Chapman further alleges that despite his failure to report those assaults, Defendant Bacon knew that Gunn had assaulted Chapman twice in December of 2013. (*Id.*)

The Court recognizes that these facts, as pled by Chapman, are difficult to reconcile. For example, Chapman fails to explain how a "threat" made on January 30, 2014 prevented him from timely reporting the previous assaults in December. Despite his failure to report the prior assaults, Chapman also alleges that Defendant Bacon knew that Gunn had assaulted Chapman twice in December of 2013. (*Id.*) Bacon contends that these facts fail to "establish that Bacon . . . had a subjective awareness of any substantial risk to Chapman's safety." (Mem. Supp. Mot. Dismiss 14, ECF No. 81.)

16

In his Memorandum in Support of his Brief in Opposition ("Response," ECF No. 93),

Chapman contends that Defendant Bacon "had actual knowledge that Marcus Gunn posed a

substantial risk to Chapman's health and safety before Gunn kicked Chapman in the face leaving

him beaten bloody causing physical injury." (*Id.* at 6.) Chapman states:

> On or about December 18, 2013, Chapman went to Bacon talked to her in
> the counselor's office, she called in Marcus Gunn.   Bacon stood by the
> counselor's desk, to Chapman's left, Gunn stood by the wall to Chapman's right
> and Chapman stood by the door.
> Chapman told her:  (i) December 10th Gunn pushed him back against the
> metal desk hurting his back; (ii) December 18th Gunn put his arm and hand on
> Chapman's chest to keep him from leaving the cell; and (iii) Gunn said Chapman
> was personally responsible for slavery and Gunn would punish him; (iv) Bacon
> knew Gunn threatened to kill Chapman.
> Bacon threatened Chapman, if he said anything she would lock up both
> him and Gunn.

(*Id.*)

Chapman's allegations against Defendant Bacon suggest that Chapman did not report, in

writing, the two assaults by Gunn that occurred in December of 2013, but instead verbally

reported them to Defendant Bacon.   Taking Chapman's allegations in both his Second Amended

Complaint and Response as true, the Court concludes that they are sufficient to state a claim that

Defendant Bacon acted with deliberate indifference to the risk of assault posed by inmate Gunn.

*See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (alteration in original) ("In failure to protect

cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he [or

she] complained to prison officials about a specific threat to his [or her] safety.'" (quoting

*McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991))).   The facts that Chapman has alleged

plausibly suggest that, after December 18, 2013, Defendant Bacon was aware that Gunn posed a

risk to Chapman and failed to take action to alleviate that risk.   *See Barnes v. Cty. of Monroe*, 85

F. Supp. 3d 696, 728-30 (W.D.N.Y. 2015) (denying motion to dismiss with respect to inmate's

failure to protect claim because inmate alleged sufficient facts to suggest that officers knew that

17

inmate faced risk of assault from another inmate, but failed to act). Chapman has alleged facts

that plausibly suggest Defendant Bacon acted with deliberate indifference. *See Odom v. S.C.*

*Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2013) ("A prison official shows deliberate

indifference if he [or she] 'knows of and disregards an excessive risk to inmate health or

safety.'" (quoting *Farmer*, 511 U.S. at 837)); *see Purvis*, 78 F. App'x at 379. Accordingly, the

Motion to Dismiss for Failure to State a Claim (ECF No. 80) will be DENIED as to Claim 1.

### b. Defendant Green (Claim 4)

With respect to Defendant Green, Chapman alleges that on January 30, 2014, in her

response to Chapman's emergency grievance, Defendant Bacon admitted that she had advised

Defendant Green of the situation between Gunn and Chapman. (Second Am. Compl. ¶ 70 (citing

Ex. B).) "After Lt. Green learned of the danger Chapman faced, she failed to move him or

Marcus Gunn." (*Id.* ¶ 71.) As a result, Chapman claims that Defendant Green "did not

adequately supervise Sgt. Bacon who violated Chapman's rights." (*Id.*)

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676. Contrary to Chapman's suggestion,

Defendant Green is not liable simply because she supervised Bacon. *See Vinnedge v. Gibbs*, 550

F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to

§ 1983 actions).

However, Chapman's allegations go beyond supervisory liability. Here, Chapman

alleges that Defendant Bacon advised Defendant Green of the situation between Chapman and

Gunn. (Second Am. Compl. ¶ 70 (citing Ex. B).) In his Response, Chapman further contends

that Defendant Green knew about the situation prior to the January 30, 2014 assault. (Resp. 5-9.)

While Chapman's allegations against Defendant Green are limited, the Court concludes that

18

Chapman has alleged that Defendant Green "knew of a constitutional deprivation and approved it, turned a blind eye to it, [or] failed to remedy it" by not taking action to move either Chapman or Gunn after Defendant Bacon advised her of the situation. *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Chapman's allegations plausibly suggest that Defendant Green had received sufficient notice of an excessive risk of harm to Chapman's safety. *See id; see also Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012) (finding that inmate sufficiently stated a failure to protect claim against officer who managed the laundry department because other inmate's threat to harm the plaintiff had been reported to the officer). Accordingly, the Motion to Dismiss for Failure to State a Claim (ECF No. 80) will be DENIED as to Claim 4.

### c. Defendant Townes (Claim 2)

With respect to Defendant Townes, Chapman has alleged that prior to the January 30, 2014 assault, Defendant Townes told Chapman, "I know you are in hell" and asked Chapman to find someone who would be willing to trade with Gunn to be Chapman's cellmate. (Second Am. Compl. ¶¶ 35-36.) On January 13, 2014, Chapman sent a request to Defendant Townes, asking that he be moved to cell 112 in pod 31 because "he found a place to move to get away from Marcus Gunn." (*Id.* ¶ 38.) However, "Townes waited so long the cell was filled." (*Id.* (citing Ex. D).)

On January 14, 2014, Defendant Townes told Chapman that "she would talk to Ms. Fant 50 building unit manager" about the situation. (*Id.* ¶ 40.) Defendant Townes, however, never talked to Ms. Fant, even though Ms. Fant had approved Chapman for a move to the Honor Pod. (*Id.*) The next day, Chapman sent another request to Defendant Townes, stating: "'Please talk to Ms. Fant. Please move me to 52, Honor Pod or move Marcus Gunn out of the cell we are not compatible.'" (*Id.* ¶ 41 (citing Ex. F).)

19

On January 21, 2014, "S. Brown, [an] inmate Chapman knew from ACC arrived and was in 33 pod." (*Id.* ¶ 43.) Brown agreed to trade with Gunn. (*Id.*) When "Chapman told Townes [that] Brown would trade . . . Townes said wait and move to 52 the Honor Pod." (*Id.*) On January 22, 2014, Chapman sent Defendant Townes a third request for a cell change. (*Id.* ¶ 44; Compl. Ex. H, at 1, ECF No. 1-8.) Defendant Townes told Chapman that he had been placed on the waiting list. (Second Am. Compl. ¶ 44.)

The Court concludes that Chapman has pled sufficient facts to demonstrate that Defendant Townes acted with deliberate indifference to the risk of assault posed by inmate Gunn. *See Pope*, 86 F.3d at 92 (quoting *McGill*, 944 F.2d at 349). These facts plausibly suggest that Defendant Townes knew of the risk of assault that Gunn posed to Chapman and simply failed to act, despite acknowledging Chapman's desperate situation and receiving at least three requests for a cell change from Chapman. *See Wade v. Winslow*, No. 3:14-CV-34, 2015 WL 4459272, at *5-6 (N.D. W. Va. July 20, 2015) (denying motion to dismiss with respect to inmate's failure to protect claim because inmate alleged facts suggesting that officer, on three occasions, ignored inmate's request for a different housing assignment prior to inmate being assaulted by another inmate). Chapman has alleged facts that plausibly suggest that Defendant Townes acted with deliberate indifference. *See Odom*, 349 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Purvis*, 78 F. App'x at 379. Accordingly, the Motion to Dismiss for Failure to State a Claim (ECF No. 80) will be DENIED as to Claim 2.

### B. Defendants Cooper and Stith (Claims 5 and 6)

In Claims 5 and 6, Chapman suggests that Defendants Cooper and Stith agreed to violate Chapman's rights under the Eighth and Fourteenth Amendments by falsely charging Chapman with Fighting with Anyone. (Second Am. Compl. ¶¶ 78, 89 (citing Ex. J).) In Claim 5, Chapman alleges that Defendant Cooper filed a false charge by noting in the Disciplinary

20

Offense Report that Chapman admitted to being in a physical altercation with Gunn. (*Id.* ¶ 80 (citing Ex. J).) Chapman claims that he did not admit to fighting with Gunn. (*Id.* ¶ 81.) In Claim 6, Chapman contends that Defendant Stith approved of the false charge written by Cooper. (*Id.* ¶ 89.)

To the extent that Chapman is raising a claim for civil conspiracy under § 1983, Chapman must allege facts indicating that Defendants Cooper and Stith "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). To this end, Chapman must allege facts that plausibly suggest "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)). "Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." *Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) (citations omitted).

Here, Chapman merely alleges that Defendants Cooper and Stith agreed to deny Chapman his Eighth and Fourteenth Amendment rights. Nowhere in his Second Amended Complaint does Chapman provide any facts that plausibly suggest that these Defendants "formed any type of agreement or acted in concert to injure him." *Id.* "The mere fact that each of these actors played a part in the events is not sufficient to show such a unity of purpose." *Id.* For these reasons, Chapman has failed to state a claim for civil conspiracy under § 1983 against Defendants Cooper and Stith.

To the extent that Chapman alleges that Defendants Cooper and Stith violated his rights by writing a false disciplinary charge,[20] "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see Taylor v. Ureste*, No. PE:12-CV-00098-RAJ, 2013 WL 12100448, at *5 (W.D. Tex. June 28, 2013) (citations omitted) (concluding that "allegations of wrongful disciplinary charges will not support a § 1983 claim, absent an underlying constitutional violation or deprivation"); *Suggs v. Dep't of Corr.*, No. 07-170J, 2008 WL 4222109, at *5 (W.D. Pa. Sept. 15, 2008) (noting that "the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation" (citing *Freeman*, 808 F.2d at 951)); *Strong v. Ford*, No. 95-16404, 1997 WL 120757, at *1 (9th Cir. Mar. 17, 1997) (concluding that "[t]he alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of 'atypical hardship on the inmate in relation to the ordinary incidents of prison life'" (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))).  As discussed *infra* in Part V.C., Chapman has failed to allege facts that suggest he enjoyed a protected liberty interest in avoiding a twenty-three (23) day placement in segregation pending resolution of the disciplinary charge. *See Bradley v. Miller*, No. 14-1698, 2015 WL 6757022, at *7-8 (W.D. Pa. Nov. 5, 2015) (concluding that inmate's claim that officers issued false misconduct charges did not state a claim for relief because her stay in solitary confinement was "not sufficient to establish an atypical and significant hardship that would implicate a liberty interest and entitle her to procedural due process protections"). *But see Freeman*, 808 F.2d at 951 (citations omitted) (noting that inmate "had a constitutionally protected right not to be placed

---

[20] The record reflects that Defendant Cooper wrote the Disciplinary Complaint and submitted it to Defendant Stith, the officer in charge. (Compl., Ex. J.)

in punitive segregation without due process"). Moreover, because the charge of Fighting with Anyone was dismissed, Chapman "has not suffered any deprivation of rights on which to rest a § 1983 claim." *Dougherty v. Virginia*, No. 7:14CV00066, 2014 WL 3549003, at *6 (W.D. Va. July 17, 2014) (citing *Chidubem v. McGinnis*, No. 96-1828, 1997 WL 809958, at *1 (6th Cir. Dec. 18, 1997)), *aff'd*, 585 F. App'x 115 (4th Cir. 2014). Accordingly, Claims 5 and 6 will be DISMISSED WITH PREJUDICE.

## C. **Defendant Slaw (Claim 7(a))**

Chapman contends that Defendant Slaw denied him due process by allowing Chapman to remain in segregation for 23 days.

### 1. **Due Process**

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005).

#### a. **The Constitution Fails to Confer a Liberty Interest in Avoiding Segregation**

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin*, 515 U.S. at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his

23

[or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Thus, the Constitution itself does not give rise to a liberty interest in avoiding segregation. *Id.*

### b. Analysis of State-Created Liberty Interests

Demonstrating the existence of a state-created liberty interest, requires a "two-part

analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*,

280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the

deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably

affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*,

No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature

of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must

next show that Virginia's statutory or regulatory language "'grants its inmates . . . a protected

liberty interest in remaining free from that restraint.'" *Puranda*, 2009 WL 3175629, at *4

(alteration in original) (quoting *Abed v. Armstrong,* 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the

normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular*

*inmate?*" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (quoting *Prieto*, 780 F.3d at

253). Second, "with the baseline established, [the Court] determine[s] whether the prison

conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*,

780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that,

"[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is

the touchstone in cases where the inmate asserting a liberty interest was sentenced to

confinement in the general population and later transferred to security detention." *Id.* at 528-29

(citing *Prieto*, 780 F.3d at 252)

24

*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation

presumptively constitute an "atypical and significant hardship . . . in relation to the ordinary

incidents of prison life." *Sandin*, 515 U.S. at 484.  In *Sandin*, the Supreme Court rejected

Conner's claim that he enjoyed a liberty interest in avoiding confinement in punitive segregation

for thirty (30) days.  *Id.* at 487.  The dissent observed:

> In the absence of the punishment, Conner, like other inmates in [the] general
> prison population would have left his cell and worked, taken classes, or mingled
> with others for eight *hours* each day.  As a result of disciplinary segregation,
> however, Conner, for 30 days, had to spend his entire time alone in his cell (with
> the exception of 50 *minutes* each day on average for brief exercise and shower
> periods, during which he nonetheless remained isolated from other inmates and
> was constrained by leg irons and waist chains).

*Id.* at 494 (Breyer, J., dissenting) (citations omitted).   The majority concluded that Conner's

situation "did not present the type of atypical, significant deprivation in which a State might

*conceivably* create a liberty interest." *Sandin*, 515 U.S. at 486 (emphasis added).

In his Second Amended Complaint, Chapman has provided the following comparison

with respect to what life was like in both segregation and the general prison population at LVCC:

> 1. Chapman was on the bottom floor in Pre-Hearing Detention (Punitive
> Segregation) and multiple times the inmates in the above cells flooded their toilets
> and the water came in under Chapman's door covering the entire cell floor with
> feces and urine.
> Chapman asked to be moved to the top floor or a different cell but was refused.
> Chapman asked for mops and disinfectant and was ignored for days.
> Marcus Gunn who admitted to kicking and beating Chapman was on the top floor.
> In more than twenty (20) years in general population this has not happened to
> Chapman.
>
> 2. Chapman's cell in Pre-Hearing Detention (Punitive Segregation) was 6 X 10
> feet; dark with no windows to see outside.
> It was a concrete block box.
> He did not know if it was day or night, isolated.
> In general population Chapman had a bright cell with a window to see outside.

| Pre-Hearing Detention (Punitive) | Regular Population |
|---|---|
| 3. Locked in cell 24 hours a day weekends | 3. Locked in cell only at count |

| | |
|---|---|
| 4. Locked in cell 23 hours a day weekdays | 4. Locked in cell only at count |
| 5. Handcuffed to go everywhere | 5. Never handcuffed |
| 6. Handcuffed and shackled often | 6. Never handcuffed or shackled |
| 7. Three (3) showers a week | 7. Unlimited showers |
| 8. One hour recreation 5 days a week | 8. Two hours recreation 3 times a day |
| 9. Limited law library access unable to get all material needed | 9. Liberal law library access |
| 10. One haircut a month | 10. Weekly haircut |
| 11. Not able to shave | 11. Daily shave |
| 12. Two phone calls per month | 12. Unlimited phone access |
| 13. Limited commissary, no food | 13. Commissary food |
| 14. Orange jump suits, house shoes | 14. Regular jeans shirts and boots |
| 15. No TV | 15. TV |
| 16. Limited access to educational material | 16. Unlimited access to education |
| 17. No job | 17. Job |
| 18. No organized outside recreation; isolation | 18. Organized outside recreation |
| 19. No in pod recreation; isolation | 19. In pod recreation three (3) times a day |
| 20. No clean clothes | 20. Clothes washed twice per week |
| 21. Meals brought to cell ate in isolation | 21. Go to chow hall three (3) times per day interact with other convicts |
| 22. Hot meals served cold. Grits and gravy congealed like rubber. | 22. Hot meals served hot |

(Second Am. Compl. ¶ 116.)

Here, Chapman has alleged facts indicating that the conditions he endured during his 23 days in segregation were similar to the conditions Conner faced in *Sandin*. Thus, Chapman has failed to allege sufficient facts indicating under controlling law that the conditions he endured were significantly harsher than those for the general inmate population such that a State might conceivably intend to create a liberty interest in avoiding the conditions. *Cf. Beverati*, 120 F.3d at 504 (finding that more burdensome conditions faced by inmates in segregation for six months were not sufficiently atypical). Courts in the Fourth Circuit have repeatedly rejected the notion

26

that inmates enjoy a protected liberty interest in avoiding confinement in segregation. *See United States v. Daniels*, 222 F. App'x 341, 342 n.* (4th Cir. 2007) (dismissing motion for release from solitary confinement, commenting that "[e]xtended stays on administrative segregation . . . do not ordinarily implicate a protected liberty interest." (citing *Beverati*, 120 F.3d at 502)); *Paylor v. Lewis*, No. 5:12-CT-3103-FL, 2016 WL 1092612, at *11-13 (E.D.N.C. Mar. 21, 2016) (finding that conditions during plaintiff's 563-day confinement to administrative segregation in high-security unit "were not so atypical as to create a liberty interest meriting procedural due process protection"). *But see Incumaa*, 791 F.3d at 530-32 (concluding indeterminate period of solitary confinement ongoing for twenty years involved onerous, severely restrictive conditions and constituted an atypical and significant hardship). Because Chapman has again failed to allege facts that suggest he enjoyed a protected liberty interest in avoiding a twenty-three (23) stay in segregation, his due process claim against Defendant Slaw, Claim 7(a), will be DISMISSED WITH PREJUDICE.

### D. Defendant Jones (Claim 8)

In Claim 8, Chapman contends that Defendant Jones violated Chapman's rights under the First and Fourteenth Amendments by responding to a grievance concerning her own conduct in violation of VDOC Operating Procedure 866.1(IV)(G)(3), and by rejecting some of Chapman's grievances at the intake level. "[T]here is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Moreover, a prison official's failure to comply with grievance procedures is not actionable under § 1983. *See, e.g.*, *Chandler v. Cordova*, No. 1:09CV483 (LMB/TCB), 2009 WL 1491421, at *3 n.3 (E.D. Va. May 26, 2009) (citations omitted) ("Because a state's grievance procedure confers no substantive rights upon prison inmates, a prison official's failure to comply with the grievance procedures is not actionable under § 1983 . . . ."); *Banks v. Nagle*,

Nos. 3:07CV419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (dismissing claim that officials failed to properly process a grievance as frivolous because no constitutional right to participate in such proceedings exists). Therefore, Claim 8 will be DISMISSED WITH PREJUDICE.

### E.  **Defendants Jane Doe and John Doe (Claim 9)**

In Claim 9, Chapman contends that Defendants Jane Doe and John Doe violated his rights by providing false information to the Commonwealth's Attorney for Brunswick County, Virginia.  Chapman alleges that this action violated section 18.2-461 of the Virginia Code. (Second Am. Compl. ¶ 249.)  Chapman, however, as "a private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Accordingly, Claim 9 will be DISMISSED WITH PREJUDICE.

### VI.  **Conclusion**

All claims against Defendant Ponton will be DISMISSED WITHOUT PREJUDICE pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  The Motion to Dismiss for Failure to State a Claim filed by Defendants Bacon, Townes, Green, Cooper, Stith, and Jones (ECF No. 80) will be GRANTED in part and DENIED in part. The Motion to Dismiss for Failure to State a Claim filed by Slaw (ECF No. 82) will be GRANTED.  Claims 5, 6, 7(a), 8, and 9 will be DISMISSED WITH PREJUDICE.  Hence, the action will proceed on Claims 1, 2,

and 4.  Any party wishing to file a motion for summary judgment must do so within thirty (30) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
M. Hannah Lauck
United States District Judge

Date: FEB 1 0 2017
Richmond, Virginia