IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LOUIS ROY CHAPMAN,**

     Plaintiff,

v.                                        Civil Action No. **3:14CV641**

**G. BACON,** *et al.*,

     Defendants.

## MEMORANDUM OPINION

     Louis Roy Chapman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Motion for Summary Judgment (ECF No. 112) filed by Defendants G. Bacon, C. Townes, and Green.[2] Chapman has filed a Response. (ECF No. 121.) Defendants have filed a Reply. (ECF No. 122.) Chapman has submitted a Surreply. (ECF No. 123.) Even though Chapman filed his Surreply without first obtaining leave from the Court to do so,[3] given his *pro se* status, the Court will consider

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] G. Bacon is a Sergeant at Lawrenceville Correctional Center ("LVCC"). (Second Am. Compl. 1, ECF No. 79.) C. Townes is the Unit Manager of 40 Building at LVCC. (*Id.*) Green is a Lieutenant at LVCC. (*Id.*)

[3] Rule 7(F)(1) of the Local Rules for the United States District Court for the Eastern District of Virginia provides that after a party files a responsive brief to a motion, "the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief." E.D. Va. Loc. R. 7(F)(1). "No further briefs or written communications may be filed without first obtaining leave of Court." *Id.*

Chapman's Surreply in its analysis of the Motion for Summary Judgment. For the reasons that follow, the Court will DENY the Motion for Summary Judgment.

## I. Procedural History

By Memorandum Opinion and Order entered on March 17, 2016, the Court granted the Motions to Dismiss for Failure to State a Claim filed by Defendants Slaw and Woodson and the Motion to Dismiss for Lack of Jurisdiction filed by the Commonwealth of Virginia. *Chapman v. Bacon*, No. 3:14CV641, 2016 WL 1071014, at *7 (E.D. Va. Mar. 17, 2016). Specifically, the Court dismissed Claim 7(a) (Chapman's Fourteenth Amendment[4] due process claim against Slaw) without prejudice,[5] dismissed Claim 7(b) (Chapman's Eighth Amendment[6] claim against Slaw) with prejudice, and dismissed Claim 8 against Woodson with prejudice. *Id.*

Following the entry of the March 17, 2016 Memorandum Opinion and Order, Chapman filed a Second Amended Complaint, (ECF No. 79),[7] wherein he sought to correct some of the

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[5] The Court stated with respect to Claim 7(a):

> Although doubtful, it is possible that Chapman could supply sufficient facts to plausibly suggest that he had a protected liberty interest in avoiding confinement in administrative segregation. *See Mauwee v. Palmer*, 471 F. App'x 594, 595-96 (9th Cir. 2012) (citation omitted) (observing that dismissal of claims should be without prejudice if the defect in pleading may be curable). Therefore, the dismissal of Claim 7(a) is without prejudice to file a proper amended complaint.

*Chapman*, 2016 WL 1071014, at *5 n.8.

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[7] The Court corrects the punctuation, capitalization, emphasis, spelling, and spacing in quotations from Chapman's submissions. The Court employs the pagination assigned to Chapman's submissions by the CM/ECF docketing system.

2

deficiencies noted in the March 16, 2016 Memorandum Opinion and Order. Chapman's Second

Amended Complaint raised the following claims for relief:

| | |
|---|---|
| Claim 1 | Defendant G. Bacon violated Chapman's rights under the Eighth Amendment by threatening "to lock Chapman in punitive segregation if he told anyone that inmate Marcus Gunn assaulted him. This chilling on Chapman led to a vicious assault by Gunn causing Chapman physical injury." (Second Am. Compl. 2.) |
| Claim 2 | Defendant C. Townes violated Chapman's rights under the Eighth Amendment by failing to protect Chapman from Gunn's assault. (*Id.*) |
| Claim 3 | Sergeant Ponton violated Chapman's rights under the Eighth Amendment because, as a supervisor, "he had actual and constructive knowledge of the imminent danger of leaving Chapman in the cell with inmate Marcus Gunn to be assaulted causing physical injury to Chapman." (*Id.*) |
| Claim 4 | Defendant Green violated Chapman's rights under the Eighth Amendment by failing to protect Chapman from Gunn's assault "after she was notified by Sergeant G. Bacon that Chapman was in imminent danger from his cell partner Marcus Gunn." (*Id.*) |
| Claim 5 | Defendant Cooper violated Chapman's rights under the Eighth and Fourteenth Amendments by agreeing with others "to approve the overt act of Cooper writing a false charge of fighting with anyone and false imprisonment of Chapman." (*Id.*) |
| Claim 6 | Defendant Stith violated Chapman's rights under the Fifth, Eighth and Fourteenth Amendments by "sign[ing] off on a false charge written by Officer J. Cooper for fighting with anyone and falsely imprisoned Chapman." (*Id.*) |
| Claim 7(a) | By falsely keeping Chapman in punitive segregation, Defendant Slaw violated Chapman's rights under the Fourteenth Amendment. (*Id.* at 3.) |
| Claim 8 | Defendant C. Jones violated Chapman's rights under the First Amendment[8] and the Fourteenth Amendment by failing "to process valid complaints," by failing "to give tracking numbers," and by "respond[ing] to grievance[s] concerning her (Jones)" in violation of institutional procedures. (*Id.*) |
| Claim 9 | Defendants Jane Doe and John Doe "intentionally li[ed], mis[led], and [gave] false information concerning the assault on Chapman to the |

---

[8] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

Commonwealth's Attorney of Brunswick County, Virginia, Lezlie Green."
(*Id.*)

On May 2, 2016, Defendants Bacon, Cooper, Green, Jones, Stith, and Townes filed a
Motion to Dismiss for Failure to State a Claim. (ECF No. 80.) On May 5, 2016, Defendant
Slaw filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 82.) By Memorandum
Opinion and Order entered on February 10, 2017, the Court dismissed all claims against
Defendant Ponton without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil
Procedure, granted the Motion to Dismiss for Failure to State a Claim filed by Defendant Slaw,
and granted in part and denied in part the Motion to Dismiss for Failure to State a Claim filed by
Defendants Bacon, Townes, Green, Cooper, Stith, and Jones. *Chapman v. Bacon*,
No. 3:14CV641, 2017 WL 559703, at *15 (E.D. Va. Feb. 10, 2017). The Court dismissed
Claims 5, 6, 7(a), 8, and 9 with prejudice. *Id.* The action proceeds on Claims 1, 2, and 4.

## II. Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record
as a whole and in the light most favorable to the nonmoving party, determines that there exists no
genuine issue of material fact and that the moving party is entitled to judgment as a matter of
law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248–50 (1986). "A fact is material if the existence or non-existence thereof
could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193
F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has
properly filed evidence supporting the motion for summary judgment, the nonmoving party may
not rest upon mere allegations in the pleadings, but instead must set forth specific facts
illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be
presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

4

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby,* 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

In support of their Motion for Summary Judgment, Defendants submit: (1) Chapman and Marcus Gunn's bed cards (Mem. Supp Mot. Summ. J. Attach. 1, ECF No. 113–1); (2) a declaration from Diana Whitfield, a Gang Investigator at LVCC (*id.* Attach. 2 ("Whitfield Decl."), ECF No. 113–2); (3) a declaration from Defendant Townes (*id.* Attach. 3 ("Townes Decl."), ECF No. 113–3); (4) a declaration from Belinda Bullock, a Classification Administrator at LVCC (*id.* Attach. 4 ("Bullock Decl."), ECF No. 113–4); (5) Marcus Gunn's Offender Cell Classification sheet, dated March 11, 2011 (Bullock Decl. Ex. A, ECF Nos. 113–4 and 113–5); (6) a declaration from Defendant Bacon (Mem. Supp. Mot. Summ. J. Attach. 6 ("Bacon Decl."), ECF No. 113–6); (7) photographs of Chapman's injury (*id.* Attach. 7, ECF No. 113–7); (8) a typed statement dated February 20, 2014 from Bernice Newcomb, a former Counselor at LVCC (*id.* Attach. 8 (ECF No. 113–8); a declaration from Newcomb, dated March 6, 2017 with the

February 20, 2014 typed statement attached (*id.* Attach. 9 ("Newcomb Decl.") and Ex. A, ECF No. 113–9); and, (10) a declaration from Defendant Green (Mem. Supp. Mot. Summ. J. Attach. 10 ("Green Decl."), ECF No. 113–10).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. The Court previously warned Chapman that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 14, at 2–3.) Chapman submitted an Affidavit with his Response. (ECF No. 121, at 35–43.) Chapman also submitted copies of his emergency grievance and offender request forms (*Id.* at 44–50); a copy of the January 30, 2014 Incident Statement (*id.* at 80); a copy of his medical records from January 30, 2014 (*id.* at 88); and, a copy of Marcus Gunn's January 31, 2014 Disciplinary Offense Report prepared by Defendant Bacon (*id.* at 89–91).[9] While the Court doubts that some of these exhibits constitute admissible evidence, Defendants have not objected to their admissibility. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see Ridgell v. Astrue*, No. DKC 10–3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012) (noting that "the objection [now] contemplated by [Rule 56(c)(2)] is not that the material 'has not' been

---

[9] Chapman also attached to his Response several pages from Defendants' exhibits in support of summary judgment. He also submitted photographs that are allegedly of himself and Gunn after the January 30, 2014 incident, but these photographs are completely blacked out. Chapman has also attached a May 11, 2016 letter and affidavit to Governor McAuliffe regarding the use of drugs by inmates at LVCC. The Court concludes that these latter two documents are immaterial to Chapman's claim that Defendants Bacon, Townes, and Green failed to protect him from Gunn's assault.

submitted in admissible form, but that it 'cannot' be" (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10–cv–1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011))). Accordingly, the Court will consider these submissions for purposes of the Motion for Summary Judgment.

Additionally, in his Second Amended Complaint, Chapman states: "I, Louis Chapman, state that I am the petitioner in this action and I know the content of the above complaint; that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief and as to those matters, I believe them to be true. . . . I declare under penalty of perjury the foregoing to be true and accurate." (Second Am. Compl. 37–38.) Such a statement fails to transform the statements in the Second Amended Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001))), *aff'd*, 469 F. App'x 160 (4th Cir. 2012). Therefore, the matters referred to as "on information and belief" will not be afforded evidentiary effect.

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Chapman.

### III. Summary of Pertinent Facts

#### A. Facts Pertaining to the Conflict Between Chapman and Gunn

On December 10, 2013, Chapman's cell mate, Marcus Gunn, knocked Chapman "back into the metal wall desk[,] hurting and bruising his back." (Second Am. Compl. ¶ 3; *see* ECF No. 121, at 36.) On December 18, 2013, "Gunn put his arm and hand on Chapman's chest to keep him from leaving his cell." (Second Am. Compl. ¶ 4; *see* ECF No. 121, at 36.)

7

On January 30, 2014, Chapman asked Gunn "to turn down his CD player so [Chapman] could focus on reading his legal material. Gunn was playing the CD player through his TV speaker." (Second Am. Compl. ¶ 2; *see* ECF No. 121, at 35.) In response, Gunn kicked Chapman in the face and then began punching Chapman. (Second Am. Compl. ¶ 2; *see* ECF No. 121, at 35.) "Chapman did <u>NOT</u> fight Gunn." (Second Am. Compl. ¶ 2; *see* ECF No. 121, at 35.) "Chapman was bleeding into his left eye, down his face onto his shirt and undershirt, from the cut put there by Gunn with his boot." (Second Am. Compl. ¶ 2; *see* ECF No. 121, at 35.) Chapman was able to ask the control booth officer to call medical. (Second Am. Compl. ¶ 2; *see* ECF No. 121, at 35.) Chapman contends that, "Marcus Gunn, a known racist, should have never been put in the same cell as Chapman, an elderly white man." (Second Am. Compl. ¶ 54.)

## B. <u>Facts Pertaining to Any Violent Tendencies Displayed by Gunn</u>

"Every inmate at LVCC is given a 'cell classification' assessment as part of their initial intake at the facility." (Bullock Decl. ¶ 5.) This assessment includes, *inter alia*, a "review of offender history of violent or assaultive behavior, both before and during incarceration." (*Id.*) "As a result of this assessment, the offender receives a cell classification score." (*Id.*)

On March 25, 2011, Belinda Bullock conducted Gunn's classification assessment. (*Id.* Ex. A.) She indicated that Gunn "exhibit[ed] none of the factors indicative of violent or assaultive propensities." (Bullock Decl. ¶ 8; *see id.* Ex. A.) Gunn was assigned a score of III, indicating that he has "[n]o violent and/or assaultive behaviors." (*Id.* Ex. A.) "From the date of Mr. Gunn's initial intake at LVCC, March 25, 2011 to January 29, 2014 . . . , Mr. Gunn was disciplined on four occasions: On September 18, 2012; March 30, 2013; August 10, 2013; and November 14, 2014, Mr. Gunn received disciplinary charges for non-violent offenses." (Bullock Decl. ¶ 9.)

8

Gunn worked in Building 40 under Defendant Townes's supervision. (Townes Decl. ¶ 5.) Defendant Townes "observed [Gunn] almost daily." (*Id.*) "[Gunn] followed the rules, was helpful to other inmates, and exhibited no assaultive or violent propensities." (*Id.*)[10]

### C. Facts Pertaining to LVCC's Management of Inmate Conflicts

"LVCC has zero tolerance for threatening or assaultive behavior among inmates." (Bacon Decl. ¶ 6; *see* Townes Decl. ¶ 10.) If an officer learns that an inmate has been threatened or involved in an assault, the inmates involved are "immediately" placed in administrative segregation for their safety. (Bacon Decl. ¶¶ 6–7; *see* Townes Decl. ¶ 10.) "An assault victim is never returned to a housing unit with their attacker following a reported assault. Instead, that inmate is placed in administrative segregation for their safety, and the offending inmate would ordinarily receive disciplinary charges." (Bacon Decl. ¶ 6.) Inmates who are also fearful for their safety will be placed in administrative segregation. (*Id.* ¶ 7.)

"Inmates are generally able to exchange roommates or move to a vacant cell, subject to certain restrictions." (Townes Decl. ¶ 12; *see* Bacon Decl. ¶ 8.) New arrivals, however, "are generally given the highest priority on cell vacancies, as determined by the classification department." (Townes Decl. ¶ 12; *see* Bacon Decl. ¶ 8.) Moreover, it is "relatively difficult to obtain housing in the Honor Pod." (Townes Decl. ¶ 12.) This is so because:

> [f]irst, inmates must meet specific eligibility criteria to be housed in the Honor Pod. Second, many inmates desire housing in the Honor Pod, so there is typically a waiting list even among those inmates who are eligible. Third, some inmates

---

[10] Gang Investigator Diana Whitfield avers that "Marcus Gunn has no known gang affiliations." (Whitfield Decl. ¶ 5.) At the time of his incarceration, Gunn "was not suspected or known to be an admitted gang member. He has not received any disciplinary actions for gang-type activity or gang affiliation during his incarceration with VDOC, including his incarceration at LVCC beginning on March 25, 2011." (*Id.*) Moreover, Defendant Townes states that "Gunn is not known to affiliate with any gang. I never observed any behavior from Mr. Gunn that indicated to me he was affiliated with a gang." (Townes Decl. ¶ 6.) However, Chapman indicates that he has never referred to Gunn as a gang member. (ECF No. 121, at 41.)

are required by the courts to attend therapeutic programs that are only available in the Honor Pod, and those inmates are ordinarily given the highest priority on cell vacancies.

(*Id.*; *see* Bacon Decl. ¶ 8.) Unit Managers are the only officers with the authority "to initiate an inmate transfer to another housing pod." (Bacon Decl. ¶ 9.)

"It is not LVCC's practice to reassign inmates every time a peaceful conflict among cell mates occurs." (*Id.* ¶ 10; *see* Townes Decl. ¶ 11.) To do so would create "an extraordinary administrative burden to manage the numerous transfers that would result under such a policy." (Bacon Decl. ¶ 10; *see* Townes Decl. ¶ 11.) Moreover, "it would not benefit the inmates to effectuate a cell transfer every time there is conflict, because learning to manage conflicts with others is part of the rehabilitative process." (Bacon Decl. ¶ 10; *see* Townes Decl. ¶ 11.)

### D. Facts Pertaining to Defendant Bacon

On or about December 18, 2013, Chapman met with Defendant Bacon in the counselor's office. (ECF No. 121, at 36.) Defendant Bacon called Gunn into the office. (*Id.*) Chapman told Defendant Bacon that on December 10, 2013, Gunn hit Chapman and knocked him back into the metal wall desk, hurting and bruising Chapman's back. (*Id.* at 37.) Chapman also told Defendant Bacon that on December 18, 2013, Gunn had put his hand and arm on Chapman's chest to keep Chapman from leaving the cell. (*Id.*) Chapman told Defendant Bacon that Gunn had said Chapman was personally responsible for slavery, and that he would punish and kill Chapman. (*Id.*) In response, Bacon stated, "If you or your cellmate start anything both will be locked up." (*Id.* (internal quotation marks omitted).)[11]

---

[11] Defendant Bacon avers that "[i]t is possible that [she] had a dialogue with Mr. Gunn and Mr. Chapman on this date, though [she has] no specific recollection of that dialogue." (Bacon Decl. ¶ 12.) She further states:

In January of 2014, Defendant Bacon "understood that Mr. Chapman and Mr. Gunn did not get along, and that efforts were underway to find Mr. Chapman different housing." (Bacon Decl. ¶ 14.)

On January 30, 2014, Chapman wrote an emergency grievance regarding the assault by Gunn that occurred earlier that day. (Second Am. Compl. ¶ 11.) Defendant Bacon responded: "Your situation was notif[ied] by [Unit Manager], St. Ponton and counsel[or] Newcomb, I Sgt. Bacon advised Lt. Green of the situation that was going on between you and it was advised to you that if you or your roommate start anything both will be lock[ed] up." (ECF No. 121, at 44; *see* Second Am. Compl. ¶ 11.) Defendant Bacon "do[es] not have a specific recollection of the circumstances leading up to that statement." (Bacon Decl. ¶ 14.)

### E. Facts Pertaining to Defendant Townes

"In December 2013 and January 2014, [Defendant Townes] was . . . the Unit Manager for Building 40," in which Mr. Chapman and Mr. Gunn were housed. (Townes Decl. ¶¶ 1,5, and 6.) During that time, the two men "periodically had conflict regarding Mr. Gunn playing music in their cell. Mr. Chapman generally spends his time working on his various lawsuits, and he did not want Mr. Gunn playing music in the cell." (*Id.* ¶ 7.) Defendant Townes spoke with Gunn

> However, the allegation that Mr. Chapman reported to me that he had been assaulted by Mr. Gunn is false. Had an assault been reported to me, I would have immediately sent Mr. Chapman for a medical examination, and then placed him in administrative segregation for his safety. I also would have authored a Serious Incident Report and potentially brought disciplinary charges against his alleged attacker.

(*Id.*) Defendant Bacon avers that "[p]rior to the assault involving Mr. Chapman and Mr. Gunn on January 30, 2014, it was never reported to me by Mr. Chapman, other inmates, or any other LVCC official that Mr. Gunn had threatened or assaulted Mr. Chapman, or that there was otherwise cause to be concerned about Mr. Chapman's safety." (*Id.* ¶ 13.) She contends that "[h]ad Mr. Chapman ever stated that (i) he had been assaulted or (ii) that he was fearful of being assaulted by Mr. Gunn, I would have immediately placed him in administrative segregation for his safety and thereafter he would have been reassigned to a different cell." (*Id.* ¶ 15.)

about the issue, and she "observed Mr. Gunn make accommodative changes to his daily routine." (*Id.*)

At some point in January of 2014, Chapman went to Counselor Newcomb's office to receive his legal mail. (Newcomb Decl. ¶ 5; *id.* Ex. A.) During that visit, Chapman told Newcomb that staff "needed to move his cell mate, M. Gunn . . . because they were having problems." (*Id.* Ex. A.) Newcomb asked if Gunn had threatened Chapman; "Chapman replied no, that they were not getting along." (*Id.*) Newcomb responded that she "did not have anything to do with moves and he was referred to the Unit Manager." (*Id.*)

Prior to the January 30, 2014 assault, Defendant Townes told Chapman, "I know you are in hell" and asked Chapman to find someone who would be willing to trade with Gunn to be Chapman's cellmate. (Second Am. Compl. ¶¶ 35–36; *see* ECF No. 121, at 38.)[12] On January 13, 2014, Chapman sent a request to Townes, "telling her he found a place to move, to get away from Marcus Gunn." (Second Am. Compl. ¶ 38.) Chapman requested to move to cell 112 in pod 31. (*Id.*) However, "Townes waited so long the cell was filled."[13] (*Id.* (citing Ex. D).)[14]

Shortly thereafter, Defendant Townes told Chapman that "she would talk to Ms. Fant 50 building unit manager." (*Id.* ¶ 40.) Defendant Townes never talked to Ms. Fant, even though Ms. Fant had approved Chapman for the Honor Pod. (*Id.*) On approximately January 14, 2014, "Chapman was informed by U/M Fant that he had been placed on the waiting list for the Honor

---

[12] Defendant Townes avers that she "never stated to Mr. Chapman, 'I know you are in hell,' or similar words." (Townes Decl. ¶ 20.)

[13] Defendant Townes avers that Chapman requested to move to a cell in Building 30. (Townes Decl. ¶ 13.) Townes "placed Chapman on the move sheet to Building 30, but the cell vacancy was filled by another inmate." (*Id.*)

[14] The exhibits Chapman references in his Second Amended Complaint are those that he included with his initial Complaint. (*See* ECF 1-1 through 1-22 (Exs. A through U).) Chapman did not refile these exhibits with his Second Amended Complaint.

Pod." (Townes Decl. ¶ 14.) On January 15, 2014, Chapman sent a request to Defendant

Townes, stating: "'Please talk to Ms. Fant. Please move me to 52, Honor Pod or move Marcus

Gunn out of the cell we are not compatible.'" (Second Am. Compl. ¶ 41 (citing Ex. F).) Townes

avers that she "had no authority to transfer Mr. Chapman to the Honor Pod." (Townes Decl.

¶ 15.)

On January 21, 2014, "[a]fter several weeks of looking, S. Brown, [an] inmate Chapman

knew from ACC arrived and was in 33 pod. He would trade with Gunn. Chapman told Townes

[that] Brown would trade, but Townes said wait and move to 52 the Honor Pod." (Second Am.

Compl. ¶ 43.)

On January 22, 2014, Chapman sent another request to Defendant Townes, stating:

> Per our conversation of January 21, 2014, 8:30 am, you were to place me on the
> move list to building 52, Honor Pod. You wrote a yellow stick-it note with
> instructions for Ms. Myers, counselor, you kept the approved request from Ms.
> Fant U/M 50 building and along with a 50 building bed log. All three (3) you said
> you would put on Myers' desk. Myers was not here. There are only two (2)
> spaces available. Please place me on the move sheet if you haven't. You told me
> "I know you are in hell." This move needs to take place thanks.

(*Id.* ¶ 44.) Defendant Townes replied that Chapman had been placed on the waiting list. (*Id.*)

On January 30, 2014, Defendant Bacon "admitted she notified Townes of the situation" between

Gunn and Chapman. (*Id.* ¶ 46; *see* ECF No. 121, at 44.)

Defendant Townes "was aware that Mr. Chapman felt that he and Mr. Gunn were not

compatible cell mates." (Townes Decl. ¶ 17.) She never offered Chapman placement in

13

administrative segregation while awaiting transfer to another cell. (ECF No. 121, at 39.)[15]

## F. **Facts Pertaining to Defendant Green**

On January 30, 2014, Defendant Bacon admitted in her response to Chapman's emergency grievance that she had advised Defendant Green of the situation between Gunn and Chapman. (Second Am. Compl. ¶ 70 (citing Ex. B); *see* ECF No. 121, at 39–40.) "After Lt. Green learned of the danger Chapman faced, she failed to move him or Marcus Gunn." (Second Am. Compl. ¶ 71.) Defendant Green knew Chapman "was in imminent danger because Bacon told her, but failed to act." (ECF No. 121, at 40.)[16]

## **IV. Analysis**

### A. **Failure to Protect Legal Standard**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)); *see Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016). However, not every harm caused by another inmate translates into constitutional liability for the officers responsible for the inmate's safety. *See Farmer*, 511

---

[15] Defendant Townes avers: "When Mr. Chapman periodically complained about his roommate, he was offered administrative segregation while he awaited a transfer, but Mr. Chapman declined." (Townes Decl. ¶ 17.) She indicates that neither Chapman nor any official at LVCC ever told her that Chapman had been assaulted by Gunn or was fearful of being assaulted. (*Id.* ¶¶ 16–18.) She states that "[h]ad Mr. Chapman ever stated that (i) he had been assaulted or (ii) that he was fearful of being assaulted by Mr. Gunn, I would have immediately placed him in administrative segregation for his safety and thereafter he would have been reassigned to a different cell." (*Id.* ¶ 16.)

[16] Defendant Green avers that "[n]either Sgt. Bacon, nor any other official at LVCC, reported to [her] that Chapman had been threatened or assaulted by Gunn prior to the incident on January 30, 2014." (Green Decl. ¶ 4.) "Neither Sgt. Bacon, nor any other official at LVCC, expressed any concern for Chapman's safety prior to the incident on January 30, 2014." (*Id.* ¶ 5.) According to Defendant Green, "[i]f it was reported to [her] or any other official at LVCC that Gunn had threatened or assaulted Chapman, or that there was otherwise cause to be concerned for Chapman's safety, Chapman would have immediately been placed in administrative segregation for his safety." (*Id.* ¶ 6.)

14

U.S. at 834. To establish a claim for failure to protect, a plaintiff must show: (1) a "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003), and (2) that prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted) (citations omitted). With respect to the second prong, the Supreme Court has emphasized that it is conscious disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997).

In *Farmer*, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he [or she] may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Therefore, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

Here, it is undisputed that Chapman suffered a serious or significant physical injury.

Thus, the matter turns on whether Defendants Bacon, Townes, and Green knew of a substantial

risk of harm to Chapman. Direct evidence of a defendant's actual knowledge is not required.

*Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 842–43).

Instead,

> [a] prison official's subjective actual knowledge can be proven through
> circumstantial evidence showing, for example, that the "substantial risk of inmate
> attacks was longstanding, pervasive, well-documented, or expressly noted by
> prison officials in the past, and the circumstances suggest that the defendant-
> official being sued had been exposed to information concerning the risk and thus
> must have known about it."

*Id.* (some internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). "'[E]ven a guard

able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not

escape liability if it is shown, for example, that he merely refused to verify underlying facts that

he strongly suspected to be true' or that he 'declined to confirm inferences of risk that he

strongly suspected to exist.'" *Id.* at 133–34 (some internal quotation marks omitted) (quoting

*Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)). The courts have found

prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians

know of threats to specific prisoners posed by a specific source, or place prisoners in the same

cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619,

622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). "On the other

hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending

harm decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563,

569 (7th Cir. 2008) (internal citation and quotation marks omitted).

To rebut the deliberate indifference charge, in the face of obvious risk, defendants may

show, "for example, that they did not know of the underlying facts indicating a sufficiently

substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Makdessi*, 789 F.3d at 134 (quoting *Farmer*, 511 U.S. at 844).

## B. **Defendant Bacon**

In Claim 1, Chapman contends that Defendant Bacon threatened "to lock Chapman in punitive segregation if he told anyone that inmate Marcus Gunn assaulted him. This chilling on Chapman led to a vicious assault by Gunn causing Chapman physical injury." (Second Am. Compl. 2.)

On or about December 18, 2013, Chapman met with Defendant Bacon in the counselor's office. (ECF No. 121, at 36.) Defendant Bacon called Gunn into the office. (*Id.*) Chapman told Defendant Bacon that on December 10, 2013, Gunn hit Chapman and knocked him back into the metal wall desk, hurting and bruising Chapman's back. (*Id.* at 37.) Chapman also told Defendant Bacon that on December 18, 2013, Gunn had put his hand and arm on Chapman's chest to keep Chapman from leaving the cell. (*Id.*) Chapman told Defendant Bacon that Gunn had said Chapman was personally responsible for slavery, and that he would punish and kill Chapman. (*Id.*) In response, Bacon stated, "If you or your cellmate start anything both will be locked up." (*Id.* (internal quotation marks omitted).)

Defendant Bacon swears that she has no recollection of this interaction with Chapman, but that, if she had been informed of such an incident, she "would have immediately sent Mr. Chapman for a medical examination, and then placed him in administrative segregation for his safety. [She] also would have authored a Serious Incident Report and potentially brought disciplinary charges against his alleged attacker." (Bacon Decl. ¶ 12; *see id.* ¶ 15.) An equivocal response is insufficient to create a genuine issue of material fact. *See Dickey v. Baptist Mem'l Hosp.-N. Miss.*, 146 F.3d 262, 266 n.1 (5th Cir. 1998) (explaining that affiant swearing that he

17

"has no present recollection of the conversation . . . . is not enough, by itself, to create a genuine issue of material fact").

Besides denying any recollection of her conversation with Chapman, Defendant Bacon has not adequately addressed why her actions or inaction on December 18, 2013 were not deliberately indifferent to a serious risk of harm to Chapman in January of 2014. On the current record, Chapman has presented evidence to show that he informed Defendant Bacon that Gunn had previously assaulted him. Furthermore, Defendant Bacon knew that Gunn had threatened to kill Chapman. Defendant Bacon did nothing. Such evidence is sufficient to support a claim of deliberate indifference against Defendant Bacon. *See Cox*, 828 F.3d at 236 ("Prison officials are deliberately indifferent if they are aware that 'the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010))); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) ("In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he [or she] complained to prison officials about a specific threat to his [or her] safety.'" (alteration in original) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991))). Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim 1.

## C. **Defendant Townes**

In Claim 2, Chapman alleges that Defendant Townes failed to protect him from Gunn's January 30, 2014 assault. (Second Am. Compl. 2.) Defendant Townes was aware of the escalating tension between Gunn and Chapman. Defendant Townes further knew that Chapman and Gunn were not compatible, and that Chapman had requested a new cellmate on several occasions. Chapman contends that at some point in January of 2014, Defendant Townes told Chapman, "I know you are in hell" and asked Chapman to find someone who would be willing

to trade with Gunn to be Chapman's cellmate. (Second Am. Compl. ¶¶ 35–36; *see* ECF No. 121, at 38.) On January 13, 2014, Chapman sent a request to Defendant Townes, asking that he be moved to another pod. (Second Am. Compl. ¶ 38.) However, "Townes waited so long the cell was filled." (*Id.* (citing Ex. D).)

Shortly thereafter, Chapman was placed on the waiting list for the Honor Pod. (Townes Decl. ¶ 14.) Chapman continued to submit requests to Defendant Townes regarding a cell change. (Second Am. Compl. ¶ 41 (citing Ex. F).) For example, on January 21, 2014, Chapman told Defendant Townes that S. Brown was willing to trade with Gunn. (*Id.* ¶ 43.) However, Defendant Townes told Chapman to wait until he was moved to the Honor Pod. (*Id.*) Chapman submitted another request to Defendant Townes on January 22, 2014, reiterating that Defendant Townes had told Chapman, "'I know you are in hell.'" (*Id.* ¶ 44.) Chapman further avers that on January 30, 2014, Defendant Bacon admitted in her response to Chapman's emergency grievance concerning Gunn's assault that she had notified Chapman's Unit Manager, who was Townes, of the situation between Gunn and Chapman. (ECF No. 121, at 44; Second Am. Compl. ¶¶ 11, 46.) Moreover, although Defendant Townes was aware of the situation, she never offered Chapman placement in segregation while awaiting transfer to another cell. (ECF No. 121, at 39.)

Defendant Townes avers that she observed Gunn almost daily, as he worked in Building 40 under her supervision. (Townes Decl. ¶ 5.) She noted that Gunn "followed the rules, was helpful to other inmates, and exhibited no assaultive or violent propensities." (*Id.*) She denies ever telling Chapman, "'I know you are in hell,' or similar words." (*Id.* ¶ 20.) Townes admits that "[i]n December 2013 and January 2014, Mr. Chapman and Mr. Gunn periodically had conflict regarding Mr. Gunn playing music in their cell." (*Id.* ¶ 7.) Townes concedes that Chapman twice requested cell transfers. First, she "placed Chapman on the move sheet to Building 30, but the cell vacancy was filled by another inmate." (*Id.* ¶ 13.) Later, Chapman

19

requested a transfer to the Honor Pod. (*Id.* ¶ 14.) Contrary to Chapman's statement, Defendant Townes avers that "[w]hen Mr. Chapman periodically complained about his roommate, he was offered administrative segregation while he awaited a transfer, but Mr. Chapman declined." (*Id.* ¶ 17.)

Construing the evidence in the light most favorable to Chapman, the evidence presents a genuine issue of material fact with respect to whether Defendant Townes was subjectively aware of a risk to Chapman's safety and failed to take any measure to alleviate that risk. *See Farmer*, 511 U.S. at 837–38. Defendant Townes has not adequately addressed Chapman's contention that she ignored his request to have S. Brown, who was available, switch with Gunn and instead told Chapman to just wait until he was moved to the Honor Pod. *See Burling v. Simon*, 406 F. App'x 855, 856 (5th Cir. 2010) (concluding that genuine issue of material fact existed regarding whether officer was deliberately indifferent for failing to recommend that plaintiff be transferred and whether officer had notice of a serious threat of harm to plaintiff); *Franklin v. Young*, No. 4:11-CV-1606 (CEJ), 2014 WL 1400132, at *3 (E.D. Mo. Apr. 10, 2014) (concluding that a genuine issue of material fact existed with respect to whether officer knew of a risk faced by plaintiff as to his housing assignment and failed to protect plaintiff); *Becerril v. Gunnels*, No. H-10-1186, 2011 WL 4729839, at *9 (S.D. Tex. Sept. 30, 2011) (denying motion for summary judgment because evidence, taken in the light most favorable to plaintiff, indicated that plaintiff informed officer of a specific threat to his safety, that officer denied a housing change, and plaintiff suffered injury the next day). On the current record, Chapman has presented evidence to show that Defendant Townes was aware of the escalating tension between Chapman and Gunn that posed a risk of violence, and did nothing. Such evidence is sufficient to support a claim of deliberate indifference against Defendant Townes. *See Cox*, 828 F.3d at 236 (quoting *Brown*,

612 F.3d at 723). Accordingly, the Motion for Summary Judgment with respect to Claim 2 will be DENIED.

## D. **Defendant Green**

In Claim 4, Chapman faults Defendant Green for failing to protect him from Gunn's assault "after she was notified by Sergeant G. Bacon that Chapman was in imminent danger from his cell partner Marcus Gunn." (Second Am. Compl. 2.) Chapman avers that on January 30, 2014, Defendant Bacon admitted in her response to Chapman's emergency grievance concerning Gunn's assault that she had advised Defendant Green of the situation between Gunn and Chapman. (Second Am. Compl. ¶ 70 (citing Ex. B); *see* ECF No. 121, at 39–40). Specifically, Defendant Bacon stated: "Your situation was notif[ied] by [Unit Manager], St. Ponton and counsel[or] Newcomb, I Sgt. Bacon advised Lt. Green of the situation that was going on between you and it was advised to you that if you or your roommate start anything both will be lock[ed] up." (ECF No. 121, at 44; *see* Second Am. Compl. ¶ 11.)[17] However, Defendant Green failed to move either Chapman or Gunn after "learn[ing] of the danger Chapman faced." (Second Am. Compl. ¶ 71.)

Defendant Green swears that "[n]either Sgt. Bacon, nor any other official at LVCC, reported to [her] that Chapman had been threatened or assaulted by Gunn prior to the incident on January 30, 2014." (Green Decl. ¶ 4.) She further swears that "[n]either Sgt. Bacon, nor any other official at LVCC, expressed any concern for Chapman's safety prior to the incident on January 30, 2014." (*Id.* ¶ 5.)

---

[17] The contents of Defendant Bacon's response to Chapman's emergency grievance may constitute inadmissible hearsay. However, as noted *supra* in Part II, Defendants have not challenged the admissibility of Chapman's exhibits.

On the current record, Chapman has presented evidence to show that Defendant Bacon informed Defendant Green of Gunn's prior threat to Chapman, and of the escalating tension between Gunn and Chapman, and Defendant Green did nothing. Such evidence is sufficient to support a claim of deliberate indifference against Defendant Green. *See Cox*, 828 F.3d at 236. Accordingly, the Motion for Summary Judgment will be DENIED as to Claim 4.

## V. Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Bacon, Townes, and Green (ECF No. 112) will be DENIED. Claims 1, 2, and 4 will be REFERRED to the Honorable Roderick C. Young, United States Magistrate Judge, for all further proceedings, including an evidentiary hearing.

An appropriate Order will accompany this Memorandum Opinion.

/s/

M. Hannah Lauck
United States District Judge

Date: 5|19|2017
Richmond, Virginia

22